In re SIGEL & CO., LTD., Debtor.

**Manning J. POST, Appellant,**

v.

**SIGEL & CO., LTD., Appellee.**

No. 89–15898.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 20, 1990.

Decided Jan. 11, 1991.

Before TANG and NOONAN, Circuit Judges, and DIMMICK,* District Judge.

NOONAN, Circuit Judge:

Manning J. Post (Post) appeals from a judgment of the district court denying his appeal from a bankruptcy court order. Post had entered into a joint venture agreement with the debtor, Sigel & Co., Ltd. (Sigel). The bankruptcy court held that the joint venture agreement was an executory contract assumable by Sigel, and the district court affirmed. A critical question we must determine is whether a party in reorganization has power to cure a default in an executory contract although the contract does not provide for such a cure. We affirm the judgment of the district court.

## FACTS AND PROCEEDINGS

On July 11, 1979, Sigel & Co. and Manning J. Post entered into a joint venture agreement for the purpose of acquiring, holding and selling parcels of real property located in Clark County, Nevada. Under the joint venture, each party agreed to pay its proportionate share of all financial obligations, including loans secured by the real property. Paragraph 8 of the agreement provided that in the event a party failed to pay its pro rata share, the remaining party would be entitled to make such payment and would have the option to purchase the defaulting party's interest in the joint venture pursuant to a set formula. Paragraph 8 further provided that the rights and obligations of the defaulting party under the joint venture would terminate upon purchase of the defaulted share. The parties agreed to submit to arbitration any dispute as to the agreement and to have judgment upon the arbitrators' award entered in any court having competent jurisdiction.

In 1986, Sigel failed to make its pro rata share of the mortgage payment. On December 3, 1986, Post paid off the entire unpaid balance of principal and interest of the mortgage. At about the same time, he recorded a document purporting to terminate Sigel's interest in the joint venture and mailed a copy of the document to Sigel.

J. Douglas Deaner, Deaner, Deaner & Scann, Las Vegas, Nev., for appellant Post.

Michael H. Singer, Oshins, Singer, Segal & Morris, Las Vegas, Nev., for appellee Sigel & Co.

---

* The Honorable Carolyn R. Dimmick, United States District Judge for the Western District of Washington, sitting by designation.

On January 11, 1987, Sigel filed a voluntary petition under Chapter 11. Besides payment of the mortgage, at the time of the filing, Post had neither tendered nor offered to tender any amount to acquire Sigel's interest in the joint venture.

On April 16, 1987, the bankruptcy court entered an order lifting the automatic stay for the sole purpose of allowing arbitration proceedings to go forward to determine Sigel's ownership interest in the real property. On December 21, 1987, the arbitrators entered an award stating that "Post shall pay ... $154,802.32 for the interest of [Sigel] in the joint venture property...." In their findings of fact entered on April 28, 1988, the arbitrators found that Sigel held a 25.875% interest in the joint venture as of the filing and that the sum of $154,-802.32 was required from Post to purchase Sigel's interest.

Sigel elected to treat the joint venture agreement as an executory contract. Its Plan of Reorganization provided for full payment of its proportionate share of the mortgage plus interest to Post. On November 30, 1988, the bankruptcy court held that the joint venture agreement was an executory contract on the date of the filing and that Sigel properly provided for the curing of its default in its reorganization plan. On June 8, 1989, the district court affirmed the bankruptcy court's order. Post appeals.

### ANALYSIS

■ The joint venture agreement between Post and Sigel was an executory contract. *Griffel v. Murphy (In re Wegner)*, 839 F.2d 533, 536 (9th Cir.1988). Both parties had not yet rendered adequate performance of the contract at the time of the filing. Post had not purchased Sigel's interest in the joint venture, and Sigel had not relinquished its rights and obligations under the agreement. *See Aslan v. Sycamore Inv. Co. (In re Aslan)*, 909 F.2d 367 (9th Cir.1990); *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885, 887 (9th Cir. 1982) (deposit receipt sale agreement remained executory where creditor still had to pay remainder of purchase price and debtor had to give up possession and con-

vey title). Neither party had received any benefit from the option provision. *See id.* at 888 (citing *In re Knutson*, 563 F.2d 916, 917 (8th Cir.1977)). Post could not yet participate in profit distributions, losses and other venture functions on the basis of an increased interest through Sigel's share, and Sigel had not yet received the purchase sum. Since performance of the contract remained due on the part of both Post and Sigel, the joint venture agreement was executory.

■ Post did not terminate Sigel's interest by purchasing Sigel's share prior to the filing of the petition. The joint venture agreement contained no automatic termination provision. It did not specify that a defaulting party had no right to cure a breach. It did not provide that breaches were incurable after a certain period. It did not state that the contract would expire upon notice of default or termination. The contract gave Post an option to purchase Sigel's share, but because Post did not complete the purchase prior to the petition, Sigel's interest in the contract did not terminate. Nothing in Nevada law prevents Sigel from curing the breach. Under section 365(b)(1)(A) of the Bankruptcy Code, Sigel is entitled to cure or to provide adequate assurance that it will promptly cure the default so that it may assume the contract. 11 U.S.C. § 365(b)(1)(A). Sigel timely assumed the contract by providing for a cure of the breach in its reorganization plan. *See* 11 U.S.C. § 365(d)(2).

The question is raised whether Sigel had power to cure a default when the contract says nothing about cure of a breach. There is no appellate case authority on the point. *See* 2 *Collier on Bankruptcy* ¶ 365.04(1), at 365–40 (L. King 15th ed. 1990). But at least one bankruptcy court has held that section 365(b) gives the trustee "the power to void the non-debtor's right under state law to terminate the contract provided the contract is executory." *Seacoast Products Inc. v. Spring Valley Farms*, 34 B.R. 379, 382 (Bankr.M.D.N.C. 1983).

The statute itself has a negative form, providing that if there has been a default in an executory contract, "the trustee may not assume such contract" unless the trust-

ee cures the default or "provides adequate assurance that the trustee will promptly cure" the default. 11 U.S.C. § 365(b)(1)(A). The implication is that the trustee has power to cure the default. Such power is vital to sustain the trustee's power to assume a defaulted executory contract. If this power were to be dependent upon specific language in the contract permitting cure of a default, the trustee's power would be sharply limited. We find no indication that Congress wanted to make the power to assume a defaulted executory contract dependent on the precise language of the contract; and if the trustee has power to assume the contract, he or she must also have power to cure or the assumption of the contract is futile.

The statutory language letting the trustee provide assurance that he will promptly cure the default contemplates an exercise of a power that would be unusual in most contracts. Normally if a contract is breached, the breach cannot be cured by an assurance that it will be cured. The statute gives the trustee a power that in this respect goes beyond the contract.

Congress, it is true, while voiding all contract clauses automatically terminating the contract on a party's bankruptcy, noted that the other contractual obligations of the parties must stand:

The unenforceability of ipso facto or bankruptcy clauses proposed under this section will require the courts to be sensitive to the rights of the nondebtor party to executory contracts and unexpired leases. If the trustee is to assume a contract or lease, the courts will have to insure that the trustee's performance under the contract or lease gives the other contracting party *the full benefit of his bargain.*" Senate Comm. on the Judiciary, Bankruptcy Reform Act of 1978, S.Rep. No. 95–989, 95th Cong., 2nd Sess. *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, at 5845; House Comm. on the Judiciary, Bankruptcy Reform Act of 1978, H.Rep. No. 95–595, 95th Cong., 2nd Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 5693, at 6304 (emphasis added).

In the light of this legislative history it is contended that Post is not getting "the full benefit of his bargain." To put Post's position another way, his right to terminate vested on Sigel's default; the bankruptcy did not deprive Post of this right; and nothing in section 365 permits the trustee to take this vested right away.

But the power that section 365(b) confers to cure a breach in an executory contract is indeed a power that permits the elimination of Post's right, which is no more "vested" than any other contractual right conferred by an unexecuted contract. As the Second Circuit held in a Chapter 13 case, a default is "an event in the debtor-creditor relationship which triggers certain consequences." Curing a default "commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified." *In re Taddeo,* 685 F.2d 24, 27 (2d Cir.1982) (before Lumbard, Friendly, and Newman). Although the Second Circuit addressed Chapter 13, it went on to say:

This is the concept of 'cure' used throughout the Bankruptcy Code. Under section 365(b), the trustee may assume executory contracts and unexpired leases only if he cures the defaults—but the cure need address only the individual event of default, thereby repealing the contractual consequences. *Id.* at 27.

If the contract had already terminated according to its terms, of course, the trustee would have nothing to assume. *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1212–13 (7th Cir.), *cert. denied* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984); *In re Bronx Westchester Mack Corp.,* 4 B.R. 730, 733 (Bankr.S.D.N.Y.1980). We need not and do not address a contract where a cure is explicitly forbidden.

Post further argues that by permitting Sigel to assume the joint venture agreement and to cure its default, the bankruptcy court in effect nullified the arbitrators' decision. However, the bankruptcy court lifted the automatic stay for the sole purpose of allowing arbitration proceedings to go forward to determine Sigel's ownership interest under the joint venture agreement. The issue of whether

a contract is executory is a question of federal law that may be resolved by a bankruptcy court. *See In re Alexander*, 670 F.2d at 888. The arbitrators did not resolve the question of whether the agreement was executory or whether Sigel could assume and cure.

■ The bankruptcy court did not err in determining that interest on the arbitration award ran from the time of default rather than from the date of the award. Nevada law provides that where there is no express contract fixing a different rate of interest, interest must be allowed at the rate of 12% upon all money "from the time it becomes due." Nev.Rev.Stat. § 99.040 (1984). When "money becomes due" is "the time when performance was due as resolved by the court upon trial of the cause." *Paradise Homes, Inc. v. Central Sur. & Ins. Corp.*, 84 Nev. 109, 116, 437 P.2d 78, 83 (1968).

The arbitrators valued Sigel's interest at the time of the filing of the petition, a filing which occurred shortly after the time of default. They resolved that Post must pay $154,802.32 to purchase Sigel's interest. Performance was due from Post, then, from the time of default or shortly thereafter. The bankruptcy court did not err by deciding that interest on the award ran from the time of default.

Post argues that performance on his part could not become due until the arbitrators determined the extent of Sigel's interest. Since he could perform only after the arbitrators' decision, he contends that interest should run from the time of the award. However, "[p]re-judgment interest shall be allowed on the amount of the debt or money value so determined" by the court. *Paradise Homes*, 84 Nev. at 116–17, 437 P.2d at 83. Since the arbitrators determined the amount due to Sigel to be $154,-

802.32 based on Sigel's interest at the time of the filing, interest prior to the arbitrators' decision is permitted on that amount.

■ Finally, Sigel seeks reasonable attorney's fees pursuant to Federal Rule of Appellate Procedure 38. Post's appeal is not frivolous; Sigel's request is DENIED.

The district court's decision is AFFIRMED.