**In re RB FURNITURE, INC.,**
**a Delaware Corporation,**
**Debtor.**

**Bankruptcy No. SA 91–40928 JR.**

United States Bankruptcy Court,
C.D. California.

June 4, 1992.

by bequest, devise or inheritance. *See* 11 U.S.C. § 541(a)(5).

Lessor asserts that Debtor defaulted on its lease by only paying the post-petition portion of real estate taxes due under the lease, thereby terminating the lease's rent abatement clause. After a hearing on March 2, 1992, I ordered Debtor to assume or reject the lease by May 30, 1992, and took the issue of payments required by Debtor prior to assuming or rejecting the lease under submission.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

Gary F. Torrell of Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for lessor.

Stephen F. Biegenzahn of Milgrim, Thomajan & Lee, Los Angeles, Cal., for creditors' committee.

Robert Jay Moore of Murphy, Weir & Butler, Los Angeles, Cal., for debtor.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Lessor brought a motion to compel payment of post-petition rent under Bankruptcy Code (the "Code") § 365(c)(3), § 363(e), or in the alternative, an application for allowance and payment of rent as an administrative expense under § 503(b)(1)(A).

## STATEMENT OF FACTS

Debtor is a furniture retailer which operated forty-six stores and five warehouses in five western states including California. After an involuntary petition was filed on November 15, 1991, debtor consented to an order for relief, effective as of December 4, 1991.

On approximately May 10, 1976, Debtor entered into a twenty-five year lease with the Marion MacNeil Smith Trust ("Lessor") for a store located in Fullerton, California (the "Property"). The lease provided for a minimum fixed rent of $5,017.92 per month,[1] plus three percent of gross sales in excess of $1,300,000 per year. In March 1991, Debtor and Lessor amended the lease (the "Amendment"). The lease, as amend-

---

1. Article III of the lease provides:

 3.01 Tenant shall pay rent to Landlord at an annual rate equal to the sum of Eighteen Thousand Two Hundred Fifty-five Dollars ($18,255.00), reflecting the return on the land, plus the amount necessary to amortize the total cost of construction of improvements as provided for in Article IV hereof (hereinafter

 collectively referred to as the "fixed annual minimum rental"), over a period of twenty-five (25) years at an annual interest rate not to exceed 9.5% per annum. Such fixed annual minimum rental shall be payable in equal monthly installments of one-twelfth each, on or before the tenth (10th) day of each calendar month.

ed (the "Lease"), abated all rent for the period of July 1, 1991 through June 30, 1992, and provided for a new fixed minimum annual rent of $123,336, commencing July 1, 1992. It also eliminated the percentage of gross sales rent provision and conditioned the rent abatement upon Debtor continuing to timely perform "all other monetary obligations accruing under the Lease." [2]

I previously granted Debtor's timely motion for an order extending the time for performance of its obligations under § 365(d)(3) until February 1, 1992, and held that payment of post-petition taxes and percentage rent would satisfy its obligations under § 365(d)(3).

The Lease requires Debtor to pay a semiannual real estate tax installment on November 20, 1991. If Debtor fails to make timely payment, it then has 20 days to cure the default. Failure to timely cure the default would result in all the abated rent becoming due and payable upon 10 days written notice from Lessor.

On December 10, 1991, Debtor mailed a check for the prorated post-petition real estate taxes to the Orange County Tax Collector. The check was returned, and then resubmitted and accepted on January 21, 1992. On January 8, 1992, Lessor notified Debtor of the default under the Lease and demanded payment of the taxes and rent for the period from December 4, 1991 to January 31, 1992.

Lessor claims that Debtor defaulted on the Lease by failing to pay the full semi-annual tax installment that was due on December 10, 1991, and since Debtor did not timely cure the default, the abated rent is all due and payable in accordance with the Lease.

Debtor replies that it is not in default and requests attorney fees incurred in connection with this matter, as provided in the Lease.[3]

## DISCUSSION

The threshold issue here is whether Debtor has defaulted on the Lease. Without a default, the Lease's rent abatement clause remains in force, and no abated rent is due. In response to Lessor's argument that Debtor defaulted by failing to pay the real property taxes timely, Debtor claims that no default was triggered because the Lease only required payment of the post-petition taxes. Debtor emphasizes that it paid the post-petition taxes within the time period prescribed by Code § 365(d)(3).[4]

Debtor's argument misses the point. Section 365 does not determine whether or not a debtor has defaulted under the terms of an executory contract. The issue of default is a matter of contractual interpretation. Here, the Lease provides that remedies on default become available to Lessor, "in the event Tenant shall default in the payment of any sum required to be paid hereunder for a period of twenty (20) days beyond the due date thereof...." Therefore, Debtor's failure to pay timely on its obligations under the Lease constitutes a default. The Lease requires that

---

**2.** Paragraph 3 of the Amendment Of Lease provides:

> 3. In the event Lessee shall default under any of the terms, covenants, conditions or provisions of the Lease at any time prior to July 1, 1993, and such default is not cured within the time provided in the Lease, all rental which was abated during the Abated Rent Period shall become due and payable in full upon ten (10) days' written notice by Lessor to Lessee.

**3.** Paragraph 17.03 of the Lease provides:

> If legal action be brought in a court of competent jurisdiction by either Landlord or Tenant because of the breach, or threatened breach, of any condition or agreement herein contained on the part of Landlord or Tenant, or

for a declaration of the rights of the respective parties to this Lease, the prevailing party shall be awarded reasonable attorneys' fees and court costs.

**4.** Section 365(d)(3) states:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.

Debtor pay all real property taxes and assessments levied or assessed against the Property, and further provides that Debtor "shall continue to be responsible and shall pay when due all other monetary obligations accruing under the Lease during the Abated Rent Period." These terms plainly require the payment of all monetary obligations accruing under the Lease. In the case of the real estate taxes, that would be the full semi-annual installment due on November 20, 1991. Since Debtor failed to make payment of the full amount of real estate taxes due on November 20, 1991, Debtor was in default on the Lease.

Having determined that the Debtor was in default, the next issue is what consequences flow from that default.

▮▮▮ Lessor asserts that Debtor's failure to timely cure the default according to the terms of the Lease results in all the abated rent becoming due and payable upon 10 days written notice from Lessor. Lessor gave notice to Debtor on January 8, 1992 and now asserts that under Code § 365(d)(3) it is entitled to immediate payment of $16,933.59 (minimum rent and taxes for the period December 12, 1991 to February 2, 1992). Lessor cites the following passage from *In re Orvco*, 95 B.R. 724 (9th Cir. BAP 1989) in support:

> [t]he enactment of section 365(d)(3) reflects a policy choice comparable to that of section 331. Congress clearly envisioned that debtor-tenants would 'pay their rent, common area, and other charges on *time* pending the trustee's assumption or rejection of the lease.' In light of this strong expression of legislative intent, I must conclude that a nonresidential lessor's administrative expense claim arising under section 365(d)(3) should be paid immediately unless the trustee establishes good cause for withholding the payment.

*Id.* at 728 (citing *In re Diekhaus Stationers of King of Prussia, Inc.* 73 B.R. 969, 973 (Bankr.E.D.Pa.1987) (citations omitted) (emphasis in original)).

In *Orvco*, the Bankruptcy Appellate Panel (the "BAP") considered whether § 365(d)(3) requires a debtor to pay the post-petition rent on a lease deemed rejected by § 365(d)(4).[5] *Id.* at 726. The BAP stated that once a lease has been rejected, § 365(d)(3) is no longer determinative. *Id.* at 728. Rather, the lessor must independently establish administrative status for its claim under Code § 503(b)(1)(A).[6] *Id.* Once the lessor's claim on a rejected lease has been established under § 503(b)(1)(A), absent cause, it should be paid immediately. *Id.* *Orvco* does not specifically address the situation where a debtor has not yet assumed or rejected the lease. However, based on the language in *Orvco* relating to § 365(d)(3), Lessor says that all obligations of Debtor under the Lease, including the abated rent which Lessor claims is all due and payable because of the default, must be paid forthwith.

*Orvco* does not address the key issues here which are: Debtor's ability to cure the default by assuming the Lease under § 365(b), and the effect of a cure on Debtor's obligation to pay the abated rent.

Given the default, a requirement to pay the abated post-petition rent pursuant to § 365(d)(3) seems to be appropriate. However, Debtor can assume the Lease under § 365(a) and (b).[7] In order to assume the

---

5. Section 365(d)(4) states:

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

6. Section 503(b)(1)(A) states:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) The actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. . . .

7. Section 365(a) and (b) provide:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to

Lease, Debtor must cure the default. Assumption would reinstate the Lease's abated rent provision as of the petition date. Accordingly, the abated post-petition rent would not have to be paid. As the Ninth Circuit has recently noted in *In re Sigel & Co., Ltd.*, 923 F.2d 142, 145 (9th Cir.1991), the Second Circuit held in a Chapter 13 case, a default is "an event in the debtor-creditor relationship which triggers certain consequences." Curing a default "commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are thus nullified." Although the Second Circuit addressed Chapter 13, it went on to say:

> The concept of 'cure' is used throughout the Bankruptcy Code. Under section 365(b), the trustee may assume executory contracts and unexpired leases only if he cures the defaults-but the cure need address only the individual event of default, thereby repealing the contractual consequences.

*Id.* at 145 (citations omitted).

*Sigel* also addressed the scope of a debtor's power to cure defaults under § 365. *Sigel* involved a real estate joint venture where each party had agreed to pay its proportionate share of all financial obligations. *Id.* at 143. The agreement provided that in the event a party failed to pay its pro rata share, the remaining party could make the payment and have the additional option to purchase the defaulting party's interest in the venture. When the debtor defaulted on its required payments, the nondefaulting party made the debtor's payment and recorded a document purporting to terminate the debtor's interest in the joint venture. *Id.* The debtor reacted by filing a voluntary petition under Chapter 11. *Id.* at 144. At the time of the filing, the nondefaulting party had neither tendered nor offered any amount to acquire the debtor's interest in the joint venture. The debtor then elected to treat the joint venture agreement as an executory contract, and in its plan of reorganization provided for full payment of its proportionate share of the financial obligations plus interest. The bankruptcy court held that the joint venture agreement was an executory contract on the date of the filing, and that the debtor's plan properly provided for curing the default. *Id.*

In affirming the bankruptcy court decision, the Ninth Circuit noted that the joint venture agreement contained no automatic termination provision, did not provide that breaches were incurable after a certain period, and did not state that the contract would expire upon notice of default or termination. *Id.* The court then addressed the question of whether a debtor has the power to cure a default when the contract is silent about cure of a breach:

> The statute itself has a negative form, providing that if there has been a default in an executory contract, "the trustee may not assume such contract" unless the trustee cures the default or "provides adequate assurance that the trustee will promptly cure" the default. 11 U.S.C. § 365(b)(1)(A). The implication is that the trustee has power to cure the default. Such power is vital to sustain the trustee's power to assume a defaulted executory contract. If this power were to be dependent upon specific language in the contract permitting cure of a default, the trustee's power would be sharply limited. We find no indication that Congress wanted to make the power to assume a defaulted executory contract

the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

dependent on the precise language of the contract; and if the trustee has power to assume the contract, he or she must also have power to cure or the assumption of the contract is futile.

The statutory language letting the trustee provide assurance that he will promptly cure the default contemplates an exercise of a power that would be unusual in most contracts. Normally if a contract is breached, the breach cannot be cured by an assurance that it will be cured. The statute gives the trustee a power that in this respect goes beyond the contract.

*Id.* at 145.

■ I understand the Ninth Circuit to hold that, provided there is still a contract to assume at the date a debtor files a petition, § 365(b) gives the debtor the power to cure any defaults even if the contract does not provide for such power. If a contract provides for termination upon default and the time to cure expires before the bankruptcy, neither can the default be cured nor the terminated contract resurrected or assumed in the bankruptcy. Furthermore, such a contract cannot be resurrected by bankruptcy. *See, Sigel,* 923 F.2d at 145. But if the contract has not been terminated before the filing, the debtor may cure and assume the contract under § 365(b). Here, the Lease did not terminate before the filing of the petition, so Debtor may seek to cure and assume the Lease.

Debtor sought and received an extension of time to assume or reject the Lease. If Debtor assumes the Lease, it will not have to pay the abated rent. If it does not assume the Lease, it will be required to pay an administrative claim for the value of the use of the Property in accordance with § 503(b)(1)(A). Lessor argues that Debtor should pay the abated rent pursuant to § 365(d)(3) until the Debtor either assumes or rejects the Lease.

■ I disagree. To require such a payment would penalize the estate and quite possibly the creditors. The provision in the Lease that eliminates the abatement of rent on a default is effectively a penalty. Debtor was not free to pay the pre-petition part of the tax without violating the statutory distribution scheme in the Code. Such payment would require court approval, and if sought that approval probably would have been denied. So, Debtor was not free to exercise its discretion and pay the tax. A debtor should not be penalized for doing the right thing. Second, Lessor agreed to the abatement. Why should it be able to gain at the expense of the estate and its creditors? The whole purpose of a reorganization under Chapter 11 is to preserve the value of the estate for the creditors. That is why § 365 allows a debtor-in-possession to cure and assume an executory contract. This purpose would be defeated if I allowed Lessor to collect the abated rent based on this default. Section 365(d)(3) should be viewed in light of the overall purpose of § 365. Where the obligation that a lessor seeks to enforce is in effect a penalty caused by a default that a debtor might reasonably cure on assumption of the lease, it is generally inappropriate to require a debtor to pay the penalty before assumption or rejection. Lastly, if Debtor rejects the Lease, the value of Debtor's use of the Property may be significantly less than what Debtor would have to pay in abated rent. For these reasons, Debtor need not pay the abated rent as a § 365(d)(3) obligation.

■ In the alternative, Lessor argues that it is entitled to adequate protection of its interest in the Property under Code § 363(e).[8] *In re Attorneys Office Management, Inc.,* 29 B.R. 96 (Bankr.C.D.Cal. 1983). In *Attorneys Office,* debtor was in the business of leasing and then subleasing office suites to attorneys. *Id.* at 97. Debt-

---

**8.** Section 363(e) provides:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold,

or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

or was ordered to pay all "net rent"[9] received from subtenants to the respective plaintiff-lessors. The amount payable as "net rent" was limited to the amount reserved under the respective leases. The lessors brought a relief from stay motion under § 362(d). Since some lessors were not receiving "net rents" equal to the amount reserved under their respective leases, the court considered whether they were entitled to adequate protection. *Id.* The court reasoned that § 363(e) provides "that any time an interest in property is used by the trustee, the court shall condition such use as necessary to provide 'adequate protection' of such interest", and since a trustee is using an interest in property while deciding whether to assume or reject a lease, such use is subject to § 363(e). *Id.* at 98. The court then concluded that:

> [f]or the use and occupation of the premises prior to assumption or rejection, the debtor must pay a reasonable amount of rental. To the extent that the rental is not paid, § 363(e) requires that the debtor provide the lessor with some form of adequate protection. This rental may be as much as the rent reserved in the lease, but no more, and possibly less.

*Id.* (citation omitted).

Lessor asserts that it is entitled to adequate protection in the form of benefits reserved under the Lease, including the post-petition abated rent.

Debtor responds that "adequate protection" pertains only to the property interests of a secured creditor, and that "[l]essors are not entitled to adequate protection prior to assumption or rejection of an unexpired lease by a Chapter 11 debtor." *In re Wheeling–Pittsburgh Steel Corp.*, 54 B.R. 385, 390 (Bankr.W.D.Pa.1985) (citing *In re Sweetwater*, 40 B.R. 733, 745 (Bankr.Utah 1984)). Debtor also asserts that since § 361[10] of the Bankruptcy Code only references sections 362, 363, and 364, the drafters of the Code intended to limit a lessor's remedies against debtors to those provided in § 365.

I agree with Judge Ashland's analysis in *Attorneys Office.* I do not believe that § 363(e) frustrates the rights of a debtor to assume or reject executory contracts under § 365. Section 363 sets forth the conditions under which a debtor may use property in which others have an interest, including lessors. Section 363(e) allows an entity with an interest in leased property to have the court condition such use as is "necessary to provide adequate protection of such interest". This provision is not inconsistent with § 365. As a practical matter when the court extends the time for a debtor to assume or reject a commercial lease, it will normally set forth certain conditions to protect the interests of everyone concerned. To allow a debtor extended periods of time to determine whether to assume or reject certain contracts without protecting the interests of the other parties to these contracts would be unfair. The addition of § 365(d)(3) with the 1984 amendments to the Code does not change this result. Section 365(d)(3) just applies to commercial real property leases. There are many other executory contracts that require the protection of § 363(e). In addition, adequate protection is a fluid concept

---

9. The net rent was defined as the rent received from subtenants less general operating expense and an allowance for administration. 29 B.R. at 97.

10. Section 361 provides as follows:
    When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
    (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
    (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
    (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

that reflects all the circumstances surrounding a debtor's use of the property, while § 365(d)(3) deals solely with debtor's performance of its obligations under the contract. It could be that the mere performance of debtor's obligations under the contract would not provide adequate protection for the party in interest.

This is such a situation. Under the circumstances, I believe Debtor's continued use of the premises should be conditioned on it setting aside in a segregated account an amount equal to the monthly minimum rent called for under the Lease as if the abatement was not in effect. This protection will assure that funds are available to pay administrative rent for Debtor's use of the Property if it rejects the Lease. Additionally, Debtor must perform all other obligations under the Lease as adequate protection for its continued use of the Property. These conditions shall apply until Debtor either assumes or rejects the Lease.

■ Finally, Lessor asserts that it is entitled to receive the $16,933.59 immediately under § 503(b)(1)(A) as an administrative expense of the estate, and cites *In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir.1988) and *In re Washington Bankcorporation*, 125 B.R. 328 (Bankr.D.D.C.1991) in support. Neither of these cases stand for the proposition that a lessor is entitled to assert a § 503(b)(1)(A) claim when a lease has not yet been assumed or rejected. *Dant & Russell* involved a lessor incurring hazardous waste clean-up costs as a result of debtor's continued operation of a wood treatment plant. 853 F.2d at 701–02. The debtor had entered into new leases postpetition. *Id.* at 702. When the lessor sought to recover these clean-up expenses from the debtor, the court in *Dant & Russell* simply held that any claim for administrative expense must establish that the costs were "actual and necessary costs of preserving the estate for the benefit of its creditors" *Id.* at 706 (citing *Matter of Baldwin–United Corporation*, 43 B.R. 443, 451 (S.D.Ohio 1984)).

While *Dant & Russell* did not address the interplay between § 365(d)(3) and § 503(b)(1)(A), *In re Washington Bankcor-*

*poration* does. *Washington Bankcorporation* is factually similar to *Attorney's Office*, involving a debtor who would lease property and then sublease the space to another entity. *Washington Bankcorporation*, 125 B.R. at 329. The lessor sought payment of its administrative claim under § 365(d)(3), while the debtor asserted that lessor's claim was limited to "the benefit the estate received under the sublease, the rule which applied before the 1984 enactment of § 365(d)(3)." *Id.* The court concluded that the lessor's claim would be measured by the original lease by virtue of § 365(d)(3):

> Prior to rejection, the trustee retains rights under the lease and a right to assume the lease. Under § 365(d)(3), the lease's terms fix the amount owed for the retention of those rights. As a provision that specifically deals with the trustee's obligations with respect to such a lease, § 365(d)(3), instead of the general body of caselaw interpreting § 503(b)(1)(A), ought to furnish the answer of what are the actual, necessary costs and expenses of preserving the estate in the case of such a lease.

*Id.* at 329.

■ I agree that with a commercial lease a debtor is required to comply with § 365(d)(3). This does not mean that at a later date the lessor might not be required to refund the estate some amount on rejection of the lease because the § 365(d)(3) payments exceed the value to the estate under a § 503(b)(1)(A) administrative claim determination. *Orvco* made it clear that § 365(d)(3) does not abrogate the § 503(b)(1)(A) determination. The $16,933.59 reflects the abated rent. Until it is clear that Debtor will not assume the Lease, it is premature for me to address what Debtor might owe Lessor as a § 503(b)(1)(A) administrative claim. Accordingly, Lessor's request for immediate payment of this amount is denied.

Debtor requests attorney fees as the prevailing party and in accordance with the terms of the Lease. That request is denied, as I do not find either party to be a

prevailing party for the purpose of awarding attorney fees under the Lease.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.