**In re CHILD WORLD, INC., Debtor.**

**Bankruptcy No. 92 B 20887.**

United States Bankruptcy Court, S.D. New York.

Feb. 1, 1993.

Miles Archer Woodlief, Foley, Hoag & Eliot, Boston, MA, for The Campbell/Massachusetts Trust.

Weil, Gotshal & Manges, New York City, for debtor.

Otterbourg, Steindler, Houston & Rosen, New York City, for Creditors' Committee.

## DECISION ON MOTION FOR ORDER REQUIRING DEBTOR TO PAY TIMELY ITS LEASE OBLIGATIONS

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The Campbell/Massachusetts Trust (the "Trust"), as lessor, has moved for an order requiring the Chapter 11 debtor, Child World, Inc., to pay timely its prerejection lease obligations as required by 11 U.S.C. § 365(d)(3). The amount involved is $47,-451.46, which represents unpaid real estate taxes due and owing under the lease in the post-petition period before the debtor rejected the unexpired lease pursuant to 11 U.S.C. § 365(a). The debtor opposes the Trust's motion and argues that there is no reason why upon the rejection of a lease a debtor should be required to pay that portion of the real estate taxes under the lease which had not yet accrued when the lease was rejected.

### FINDINGS OF FACT

1. The debtor filed with this court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 6, 1992 and was authorized to operate its business and manage its properties as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. On May 6, 1992, the court signed an *ex parte* first day order extending up until confirmation the debtor's time to assume or reject all of its store leases, subject to the right of any lessor to move prior to confirmation to compel the debtor to assume or reject any lease sooner. On ap-

peal, this order was affirmed. *In re Child World, Inc.,* 146 B.R. 89 (S.D.N.Y.1992).

3. The debtor was a publicly owned company which operated a retail toy supermarket chain. It has discontinued its business and has either sold or rejected its unexpired business leases in anticipation of a plan of complete liquidation.

4. On February 27, 1989, Cmane–Hyannis Retail Limited Partnership ("Hyannis") and the debtor entered into a lease for approximately 36,416 square feet of retail space at the Hyannis Festival Shopping Center, Hyannis, Massachusetts. Hyannis subsequently assigned its lessor's interest in the lease to the Trust. The lease requires the debtor to pay rent in the form of a base charge monthly, a percentage of gross profits and the debtor's proportionate share of the net amount (after reflecting all discounts for early payment, refunds and credits and after excluding all penalties, interest and late charges) of all real estate taxes and assessments levied and assessed against the shopping center.

5. Section 6.01 of the lease specifies the method for calculating the debtor's proportionate share of the real estate taxes. Subsection (b) in Section 6.01 provides that the debtor is required to pay its proportionate share of the real estate taxes within fifteen days after the lessor submits to the debtor proof of payment of taxes by the lessor, regardless of when the taxes were billed or become due and payable. This provision reads in relevant part as follows:

> (b) Tenant shall be liable for and shall pay its share of Taxes only with respect to Taxes in respect of the term of this Lease, regardless of when such Taxes are billed or become due and payable. Tenant shall pay its proportionate share of such Taxes within fifteen (15) days after Landlord submits to Tenant proof of payment of taxes by Landlord, a tax bill for such Taxes and a statement setting forth the manner in which Tenant's proportionate share of Taxes is calculated or ten (10) days before the same are due and payable, whichever is later.

6. On June 15, 1992, more than five weeks after the petition date of May 6, 1992, the Trust submitted to the debtor its proof of payment of the real estate taxes assessed for the second half of fiscal year 1992, namely, the period from July of 1992 through December of 1992.

7. On September 4, 1992, nearly three months after the Trust submitted its rent bill to the debtor, which included taxes assessed for the second half of fiscal year, 1992, an order was entered granting the debtor's motion to reject the shopping center lease with the Trust.

8. The debtor maintains that the Trust does not have an allowable administrative claim for that portion of the real estate taxes attributable to the post-petition period from the rejection date on September 4, 1992 to the end of the second half of fiscal year 1992, ending on December 31, 1992.

9. The trust contends that the taxes for the entire second half of fiscal year 1992 became due and owing as rent when the Trust submitted its proof of payment on June 15, 1992, pursuant to the provisions of Section 6.01(b) of the lease, which was during the post-petition period, but before the debtor was authorized to reject the lease in accordance with this court's order dated September 4, 1992.

## DISCUSSION

The debtor regards the Trust's claim as one for taxes assessed in the prepetition period which do not rise to the level of a first priority administrative expense under 11 U.S.C. § 503(b)(1)(B), as held in *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n, Inc.),* 880 F.2d 1540, 1548 (2d Cir. 1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (real estate taxes become due and owing as of the "tax status date," the date on which the taxes are assessed and a lien attaches to the property). The Trust argues that the debtor's liability is for post-petition rent, which includes real estate taxes paid by the Trust, whereas the debtor's obligation to pay the real estate taxes is not that of a taxpayer but instead, that of a tenant who must reimburse the taxpayer-landlord pur-

suant to the lease for the taxes as additional rent.

A debtor's obligation for post-petition rent under an unexpired lease for nonresidential real property is governed by 11 U.S.C. § 365(d)(3), which provides in relevant part as follows:

> (3) The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title [which deals with the allowance of first priority administrative expenses, including taxes incurred by the estate].

11 U.S.C. § 365(d)(3). Hence, although 11 U.S.C. §§ 365(g) and 502(g) provide that a claim arising from the rejection of an unexpired lease of the debtor shall be treated as a prepetition unsecured general claim, administrative status is accorded pursuant to 11 U.S.C. § 365(d)(3) to the debtor's post-petition obligations under unexpired leases of nonresidential property until the lease is either assumed or rejected. In establishing the debtor's post-petition obligation at the level required by the unexpired lease of nonresidential property until it is either assumed or rejected, § 365(d)(3) alters the prior rule that the debtor is liable for post-petition use and occupancy only to the extent it reflects a necessary cost of preserving the estate and qualifies as an administrative expense under 11 U.S.C. § 503(b)(1)(A). *Paul Harris Stores, Inc. v. Mabel L. Salter Realty Trust,* 148 B.R. 307 (S.D.Ind.1992); *In re RB Furniture, Inc.,* 141 B.R. 706 (Bankr.C.D.Cal.1992); *In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879 (Bankr.E.D.N.Y.1986); *In re Swanton Corp.,* 58 B.R. 474 (Bankr.S.D.N.Y.1986). Thus, 11 U.S.C. § 365(d)(3) does not require a determination of the reasonable value of the debtor's post-petition use and occupancy and, instead, establishes the debtor's post-petition responsibility as comprising all the obligations under the lease until the lease is either assumed or rejected.

The debtor argues that its post-petition obligation for real estate taxes for the post-petition period up to the rejection of the lease should, at most, be limited to the pro-rata portion of the taxes attributable to that period, and not for the entire unaccrued second half of the fiscal tax year 1992, which extended beyond the September 4, 1992 rejection date up to December 31, 1992. The debtor's argument elides the point that neither the Trust nor the Massachusetts taxing authorities regards the debtor as directly liable for the payment of taxes *qua* taxes. Instead, the Trust seeks to compel the debtor to perform its post-petition obligation mandated under 11 U.S.C. § 365(d)(3) and pay the rent due under the lease in accordance with its terms until the lease was rejected. Real estate taxes paid by the Trust and submitted to the debtor for payment pursuant to Section 6.01 of the unexpired lease are an integral component of the lease which had not yet been rejected by the debtor.

In *Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.),* 979 F.2d 1358, 1367 (9th Cir.1992), a lease which had been assumed by a trustee in bankruptcy and later rejected, included interest as a component of the damages previously awarded to the landlord by a state court. The trustee argued that although the trustee's assumption and subsequent rejection of the lease entitled the landlord to a first administrative priority for distribution purposes pursuant to 11 U.S.C. § 726(a)(1), the interest obligation should be treated as a fifth level interest claim in accordance with 11 U.S.C. § 726(a)(5). The court rejected the trustee's argument and ruled that interest was an integral component of the contract and said:

> ... We conclude that the interest awarded by the Utah state court is not "interest ... on [the] claim" under § 726(a)(5); rather, it is part of the claim because it is part of the damages flowing from a breach of the contract.

*Frontier Properties,* 979 F.2d at 1368.

Similarly, in the instant case, the real estate taxes which the Trust paid for the second half of fiscal tax year 1992, prior to the petition date and then billed to the debtor on June 15, 1992, after the petition

date, but before the lease was rejected on September 4, 1992, is not a tax claim. Instead, it is a component of the debtor's rent obligation under the lease in accordance with 11 U.S.C. § 365(d)(3). Pursuant to the plain meaning of this Bankruptcy Code provision, the debtor is required to pay all post-petition obligations under its nonresidential real estate lease with the Trust until such lease was rejected on September 4, 1992. Before the debtor filed its Chapter 11 petition on May 6, 1992, it customarily satisfied its lease obligation to pay its share of the shopping center real estate taxes for each half of a fiscal year within fifteen days after the landlord submitted to the debtor proof of payment by the landlord. This payment was an integral component of the debtor's rent obligation and was not a payment of taxes to the Massachusetts tax authorities because the debtor, as a tenant, was not directly liable for the payment of real estate taxes at the shopping center. Therefore, the issue of whether or not the tax obligation may be prorated is irrelevant because the debtor's obligation is for post-petition rent in accordance with the terms of the lease and not for taxes as such. There is nothing in the lease which calls for a proration of the taxes based on occupancy under the lease. The debtor's rent obligation includes its liability for real estate taxes for each fiscal period attributable to the debtor and payable fifteen days after the landlord submits to the debtor its proof of payment. The debtor failed to pay this post-petition obligation under its lease which was due and owing by June 30, 1992.

In *Vause v. Capital Poly Bag, Inc. (In re Vause)*, 886 F.2d 794 (6th Cir.1989), the Sixth Circuit ruled that rent for 361 days was "due" under a lease at the time the Chapter 11 petition was filed, even though the petition was filed four days prior to the annual payment date. Therefore, the landlord could claim for prepetition rent under 11 U.S.C. § 502(b)(6)(B), as past damages for rejection of an unexpired lease, notwithstanding that the debtor contended that there was no "unpaid rent due under such lease" within the meaning of 11 U.S.C. § 502(b)(6)(B) "on the date of the filing of the petition," as expressed in 11 U.S.C. § 502(b)(6)(A)(i), because the rent obligation did not come due until four days after the filing date. The Sixth Circuit concluded that the term "due" should be construed in the sense of "owing" rather than in terms of a maturity date. *Id.* at 800.

The *Vause* case has the effect of expanding a landlord's right to collect prepetition past rent as damages pursuant to 11 U.S.C. § 502(b)(6)(B), as distinguished from the loss of future rent in accordance with 11 U.S.C. § 502(b)(6)(A). For purposes of determining past rent damages under 11 U.S.C. § 502(b)(6)(B), the Sixth Circuit treated the language of "unpaid rent ... due under such lease" as unpaid rent *accrued* up to the date of the petition. *Id.* at 799–800. The Sixth Circuit concluded that it was error for the lower courts to interpret 11 U.S.C. § 502(b)(6)(B) to eliminate past damages based on the fortuity of the filing date of the petition. *Id.* at 803. Therefore, a proration of the rent was appropriate for past damages in order to avoid the lower courts' conclusion that the landlord had no claim for past damages because the rent obligation was not due until four days after the petition was filed.

In the instant case, the Trust does not seek to recover for "unpaid rent due under such lease" as of the date of the petition as expressed in 11 U.S.C. § 502(b)(6)(B), in which case the *Vause* court applied a proration approach in order to protect the landlord's damage claim for past rent due under a lease at the petition date. Nor does the Trust seek to recover for the loss of future rent, where 11 U.S.C. § 502(b)(6)(A) establishes a maximum cap of one year or 15 percent, not to exceed three years of the remaining term of the lease following the earlier of the date of the petition and the date of repossession or surrender of the leased property. Instead, the trust invokes 11 U.S.C. § 365(d)(3) which "requires a trustee or debtor in possession to perform timely all the obligations arising from and *after* the order for relief under any unexpired lease of nonresidential property, until such lease is

assumed or rejected...." 11 U.S.C. § 365(d)(3) (emphasis added). One of the prerejection obligations under the lease in question was to pay the calculated portion of the taxes attributable to the debtor at the shopping center as additional rent due and owing fifteen days after the Trust submitted its paid bill to the debtor on June 15, 1992. The debtor's contention that the real estate taxes should be prorated and its obligation limited to the accrued amount of taxes up to the rejection date of September 4, 1992, ignores the fact that the entire amount of taxes for the second half of the fiscal year 1992 was due and owing as an integral component of the rent under the lease, which was payable by June 30, 1992 in accordance with section 6.01(b) of the lease.

The debtor's reliance on *In re Swanton*, 58 B.R. 474 (Bankr.S.D.N.Y.1986), is misplaced. In that case, the lease called for the payment of rent in the form of a single annual payment. The rejection occurred only a few months into the annual period covered by the rental. Therefore, there was no billing date or specifically obligated amount required to be paid as rent between the filing of the petition and the date when the debtor rejected the lease. On those facts, the court concluded that equity required proration. *Id.* at 475. In the instant case, there was a specifically billed item for taxes which were due as additional rent fifteen days after the Trust submitted proof of payment on June 15, 1992. This specifically billed amount became a rent obligation which the debtor was required to perform timely in accordance with 11 U.S.C. § 365(d)(3) until the lease was rejected.

More to the point is the ruling in *In re RB Furniture*, 141 B.R. 706, 710 (Bankr. C.D.Cal.1992). The lease required the debtor to pay all real property taxes and assessments levied against the property, and further provided that the debtor would be required to pay all monetary obligations accruing under the lease. Included among the monetary obligations was the full semi-annual installment of real estate taxes due on November 20, 1991, five days after the bankruptcy petition was filed on November

15, 1991. The court held that because the debtor "failed to make payment of the *full amount* of real estate taxes due on November 20, 1991, Debtor was in default on the Lease." *Id.* (emphasis added). The landlord successfully claimed that the debtor's check for the prorated post-petition real estate taxes constituted a default under the lease because the lease required the debtor to pay the full semi-annual tax installment that was due on November 20, 1991, or cure within twenty days grace period thereafter on December 10, 1991.

The debtor in the instant case could have limited its exposure under the lease for only those obligations which came due within sixty days after the filing of the petition, or the date of rejection, whichever was sooner. This is so because the debtor's risk of loss is limited by 11 U.S.C. § 365(d)(4), which provides that an unexpired lease of nonresidential property will be rejected by operation of law sixty days after the filing of the bankruptcy petition. As noted by the district court in *In re Paul Harris Stores, Inc.*, 148 B.R. 307 (S.D.Ind. 1992), "the debtor cannot be saddled with more than sixty days' worth of post-petition rent on a rejected lease, unless it moves for and receives an enlargement of time, as Harris did here." *Paul Harris Stores*, 148 B.R. at 312. Similarly, in the instant case, the debtor chose to obtain an enlargement of the lease, permitting the debtor to assume or reject its leases up until confirmation, unless a landlord moved for a sooner determination. The order approving this procedure was affirmed on appeal. *In re Child World, Inc.*, 146 B.R. 89 (S.D.N.Y.1992). Therefore, the debtor put itself into a position where the landlord is entitled to be "awarded post-petition, pre-rejection rent according to the terms of the lease, and factors such as fair market value, extent of occupation and benefit to the estate were considered irrelevant in computing the amounts owed." *Paul Harris Stores*, at 313.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter and the parties in accor-

dance with 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and (B).

2. The Trust is entitled to an order pursuant to 11 U.S.C. § 365(d)(3) requiring the debtor to pay timely its prerejection rent obligation in the sum of $47,451.46, which represents unpaid real estate taxes attributable to the debtor under its lease at the Trust's shopping center, which sum was due and owing as post-petition rent by June 30, 1992.

3. The debtor's obligation for the real estate taxes for the second half of the fiscal year 1992 represents an integral component of additional rent due and owing under the unexpired lease with the Trust for nonresidential real estate and does not constitute a claim for taxes as such which the debtor alleges should be prorated and limited to the amount of taxes accrued in the post-petition period up to the date of the debtor's rejection of the unexpired lease.

SETTLE ORDER on notice in accordance with the foregoing.