**In re R.H. MACY & CO., INC., et al., Debtors.**

**Bankruptcy No. 92 B 40477 (BRL).**

United States Bankruptcy Court, S.D. New York.

April 19, 1993.

Weil, Gotshal & Manges by Richard P. Krasnow, New York City, for debtors in possession.

Edwards & Angell by Sandra A. Riemer and Gabriel Del Virginia, New York City, for Lakewood Mall Shopping Center Co. and MaceRich Co.

Otterbourg, Steindler, Houston & Rosen, P.C. by Debra Sudock, New York City, for the Unsecured Creditors' Committee.

Berlack, Israels & Liberman by Bari Mattes, New York City, for Bondholders' Committee.

## MEMORANDUM DECISION ON MOTION FOR ORDER COMPELLING DEBTOR'S TIMELY PERFORMANCE OF LEASE OBLIGATIONS

BURTON R. LIFLAND, Chief Judge.

Bullock's, Inc. ("Bullock's" or the "Debtor"), one of the above-captioned debtors, operates a 260,000 square foot department store in the Lakewood Center Mall, located in Lakewood, California (the "Property"), pursuant to a sublease (the "Lease") with Lakewood Mall Shopping Center Company and The MaceRich Company (collectively, "MaceRich"). By this motion, MaceRich moves for an order, pursuant to section 365(d)(3) of the Bankruptcy Code, 11 U.S.C. §§ 101—1330 (1993) (the "Code"), compelling the Debtor to pay currently all obligations under the Lease, including, but not limited to, certain reassessed real property taxes aggregating $437,763.67. Although Bullock's became obligated for payment or reimbursement of such amount under the Lease after it filed its petition on January 27, 1992 (the "Petition Date"), the reassessed taxes are rooted in and relate primarily to prepetition tax periods. The Debtor opposes the motion, asserting that MaceRich is attempting to use section 365(d)(3) of the Code to elevate a contingent prepetition claim for the reimbursement of reassessed real property taxes to administrative claim status.

### FACTS[1]

On January 27, 1992 and thereafter, R.H. Macy & Co., Inc. ("Macy's") and eighty-

---

1. The facts pertinent to this matter are undisputed.

eight of its subsidiaries, including Bullock's, each commenced a voluntary case under Chapter 11 of the Code. The debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered before this Court. Each of the debtors continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Code.

Macy's is a privately held company, the principal assets of which are 100% of the shares of the outstanding common stock of certain operating companies, including Bullock's, through which Macy's directly or indirectly owns and operates department stores located in 18 states and specialty stores located in 20 states. Together with its subsidiaries, Macy's is one of the nation's largest retail department store operators.

On March 24, 1992, this Court entered an order extending until confirmation of a plan or plans of reorganization the debtors' time to determine whether to assume or reject their unexpired leases of nonresidential real property, subject to the right of any lessor to move to compel the debtors' to make such decision earlier based upon facts and circumstances extant at that time. This Court's order was affirmed, in part, and reversed, in part, on appeal. *See In re R.H. Macy & Co., Inc.*, 1992 WL 322288 (S.D.N.Y.1992).

Bullock's acquired the Lease by assignment from Federated Department Stores, Inc. ("Federated") in May 1988, at which time the Lease had a remaining term of more than thirty-five (35) years. The original sublessor, Lakewood Commercial Enterprises, Inc., consented to the assignment.

Under applicable California law, which governs this dispute, commercial properties may be reassessed when any one of several designated changes in ownership occur. Transfers of leases with remaining terms of more than thirty-five (35) years constitute one such designated change in ownership. The reassessed real property taxes at issue in this case relate to Macy's 1988 acquisition of Bullock's from Federated which, due to the length of the remaining term of the Lease (i.e., more than thirty-five (35) years), constituted a change in ownership that gave rise to a revaluation and reassessment of the Property.

In or about June or July 1992, and subsequent to the Petition Date, the Los Angeles County Tax Collector issued supplemental and adjusted tax statements with respect to the Property, predicated upon Macy's 1988 acquisition of Bullock's from Federated. The reassessed taxes, aggregating $437,763.67, relate to tax years 1987 through 1992. Both MaceRich, the current sublessor, and Bullock's have contested the reassessments on a number of grounds not relevant to this dispute; however, payment to the tax gatherer is required pending determination of such contest.

Approximately $57,000 of the taxes became due and payable on December 10, 1992, some eleven months after the Petition Date. MaceRich made such payment to avoid the imposition of penalties, reserving its rights to recover that amount from Bullock's under the Lease. MaceRich seeks, pursuant to this motion, to recover from Bullock's the amount previously paid, as well as the balance which became due and payable on April 10, 1993, but which has not been paid pending this decision.

Under the Lease, Bullock's pays a minimum annual rental to MaceRich in equal monthly installments on the first day of each calender month, plus a percentage of net sales, calculated in accordance with a formula described in the Lease. The Lease also requires Bullock's to pay all taxes and assessments levied against the Property. Specifically, section 3.02 of the Lease provides, in relevant part, that:

[i]n addition to the minimum rental provided above, [Bullock's] agrees to pay all taxes and assessments which may be levied by any state, federal, county, city or other governmental agency upon the said demised premises....

On March 1, 1993, Bullock's announced its intention to close its store located at the Lakewood Shopping Center, but has not announced whether it intends to assume or reject the Lease. MaceRich contends that,

irrespective of Bullock's intentions with respect to the Lease, Bullock's is obligated, pursuant to section 365(d)(3) of the Code, to pay currently the reassessed taxes as postpetition Lease obligations.

## DISCUSSION

MaceRich's motion to compel the current payment of the reassessed taxes is premised upon section 365(d)(3) of the Code, which provides, in relevant part, that:

> [t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3).

According to MaceRich, the Los Angeles County Tax Collector does not regard Bullock's as responsible for the payment of the real estate taxes. While the Debtor is not primarily liable for the reassessed real property taxes, it is contractually liable under the Lease. Since the supplemental and adjusted tax statements were issued subsequent to the Petition Date, at which time they became obligations of the Debtor under the Lease, MaceRich contends they must be paid in accordance with section 365(d)(3) of the Code.

As noted above, the Debtor contends that MaceRich is attempting to use section 365(d)(3) of the Code to elevate an alleged contingent, unliquidated and unmatured prepetition claim for the reimbursement of taxes to administrative claim status. The key issue, according to the Debtor, in determining whether obligations under a lease must be satisfied pursuant to section 365(d)(3) of the Code, pending assumption or rejection, is whether such obligations constitute prepetition or postpetition claims of the debtor within the meaning of section 101(5) of the Code.[2] The Debtor reasons that, as of the date of the Lease assignment, MaceRich knew or, as a matter of law is charged with knowing that, under California law the transfer of the Lease from Federated to Bullock's mandated a revaluation and possible reassessment of the Property. Applying the Code's broad definition of the term claim, which includes "any right to payment, whether or not ... unliquidated, contingent, unmatured ...," 11 U.S.C. § 101(5), the Debtor concludes that MaceRich held an unliquidated, contingent and unmatured claim as of the Petition Date, which became fixed and liquidated upon the issuance of the supplemental tax bills postpetition. According to Bullock's, because the obligation to pay MaceRich under the Lease constitutes a prepetition claim under the Code, it need not be "timely performed" under section 365(d)(3) of the Code.

Bullock's argument, while grounded in recognized principles concerning when a "claim" arises for bankruptcy purposes, is contrary to both the plain language of the

2. Section 101(5) provides that a claim is any: (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; 11 U.S.C. § 101(5). The legislative history of § 101(5) (originally enacted as § 101(4)) indicates that the term "claim" is intended to be defined as broadly as possible so that maximum relief can be afforded to a debtor:

> By this broadest possible definition ... [the Code] contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 309 (1977), reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6266; see also S.Rep. No. 95-989, 95th Cong., 2d Sess. 21-22 (1978), reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5807-08. See, e.g., In re Robinson, 776 F.2d 30, 34-5 (2d Cir.1985), rev'd on other grounds sub nom. Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) ("Congress sought the 'broadest possible definition' of a claim ... intending that virtually all obligations to pay money be amenable to treatment in bankruptcy").

statute and the relationship among the parties.

■ "The starting point in any case involving construction of a statute is the language itself." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 541, 98 S.Ct. 2923, 2929, 57 L.Ed.2d 932 (1978); *see United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989). Section 365(d)(3) of the Code requires a trustee or debtor in possession, pending assumption or rejection of a nonresidential real property lease, to "timely perform all *obligations* ... arising from and after the order for relief ... notwithstanding section 503(b)(1)." 11 U.S.C. § 365(d)(3) (emphasis added). Congress chose to use the word "obligation" rather than the word "claim," which is defined in section 101(5) and used throughout the Code. Congress certainly knew how to use the word claim, and could have used it in section 365(d)(3).[3] As a matter of statutory construction, "[c]ourts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.' " *Pioneer Investment Services Company v. Brunswick Assoc. Limited Partnership*, — U.S. —, —, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)). It is, therefore, inappropriate to equate the term obligation with the term claim and evaluate when an "obligation" arises under a lease of nonresidential real property by analogy to precedent determining when a "claim" arises for bankruptcy purposes.

■ The ordinary meaning of the word obligation refers to "[t]hat which a person is bound to do or forbear." *Black's Law Dictionary* 1074 (6th ed.1990). There was no obligation for the Debtor to perform prior to the Petition Date. The supplemental and adjusted tax statements were first issued eleven months after the Petition Date in June or July 1992, at which time they first became obligations of the Debtor under the Lease. As MaceRich correctly notes, Bullock's is not directly liable for the reassessed taxes, but only contractually obligated to pay such amounts to MaceRich under section 3.02 of the Lease.[4] Accordingly, the reassessed taxes represent an obligation of Bullock's under the Lease that arose after the order for relief which must be timely performed in accordance with section 365(d)(3).[5]

A recent decision concerning issues somewhat similar to the matter before the Court is *In re Child World, Inc.*, 150 B.R. 328 (Bankr.S.D.N.Y.1993). In *Child World*, the court interpreted a lease provision providing for the reimbursement of real estate taxes similar to the Lease provision at issue in this case. Five weeks after the petition date of May 6, 1992, the landlord submitted to Child World proof of payment of real estate taxes for the second half of the fiscal year—July 1992 through December 1992. On September 4, 1992, the court entered an order rejecting the

---

**3.** Congress, arguably, should have used the defined term "claim" in section 365(d)(3), rather than the word "obligation," if it wanted to preserve a uniformity of treatment based upon when a claim arises. Section 365(d)(3) of the Code represents a form of special legislation somewhat out of synch with other policy considerations of the Code. *See In re Johns–Manville Corp.*, 57 B.R. 680, 685–90 (Bankr.S.D.N.Y. 1986).

**4.** Since the Debtor's obligation to reimburse MaceRich for the real property taxes under the Lease is not that of a taxpayer as such, the decision of the Second Circuit Court of Appeals in *In re Parr Meadows Racing Ass'n, Inc.*, 880 F.2d 1540 (2d Cir.1989), *cert. denied sub. nom. Suffolk County Treasurer v. Barr*, 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990), is inapposite here.

**5.** In *In re Ames Dept. Stores, Inc.*, 150 B.R. 107, 108–09 (Bankr.S.D.N.Y.1993), the court evaluated a lease providing for the reimbursement of real estate taxes incurred by a landlord similar to the Lease. The court held that such real estate taxes constituted unmatured, prepetition obligations, within the definition of a claim in section 101(5) of the Code. The court reasoned that the time for payment does not govern when a claim arises under the Code and, by analogy, does not govern when an obligation arises under section 365(d)(3) of the Code. For the reasons discussed above, *Ames* court's analysis is not consonant with the plain language of section 365(d)(3).

lease. The landlord subsequently filed a motion to compel the debtor to pay such amounts as lease obligations arising after the order for relief, notwithstanding that the debtor was authorized to reject the lease as of September 1992. The debtor regarded the landlord's claim as one for taxes, arguing that the landlord did not have an administration claim for that portion of the taxes attributable to the postpetition period from the lease rejection date to the end of the fiscal year.

The *Child World* court granted the landlord's motion and required the debtor to pay, as a postpetition but prerejection obligation under section 365(d)(3), the full amount of taxes for the second half of the fiscal year, notwithstanding that the taxes included coverage for a post-rejection time period. The court regarded the debtor's argument as "elid[ing] the point that neither the [landlord] nor the ... taxing authorities regard the debtor as directly liable for the payment of taxes *qua* taxes." *Id.* at 331 (emphasis in original). Rather, the court stated that:

> [t]he debtor's obligation for the real estate taxes for the second half of the fiscal year 1992 represents an integral component of additional rent due and owing under the unexpired lease with the [landlord] for nonresidential real estate and does not constitute a claim for taxes as such which the debtor alleges should be prorated and limited to the amount of taxes accrued in the post-petition period up to the date of the debtor's rejection of the unexpired lease.

*Id.* at 334.

The Debtor attempts to distinguish *Child World* on the basis that the tax claims in issue in that case related to postpetition periods. The Debtor fails to recognize, however, that in *Child World*, as here, the lessee's or sublessee's obligation to pay real estate taxes is not that of a taxpayer, but rather that of a party to a lease, which is obligated to reimburse the taxpayer-lessor pursuant to the terms of a lease as

additional rent or otherwise. In this case, that obligation arose postpetition when the supplemental and adjusted tax statements were issued, at which time they first became obligations of the Debtor under the Lease.

 Finally, at oral argument, counsel for Bullock's contended, as a policy matter, that section 365(d)(3) of the Code was not intended to operate in the manner argued by MaceRich. While counsel may or may not be correct,[6] "[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, — U.S. —, —, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 702, 66 L.Ed.2d 633 (1981)).

### CONCLUSION

For the foregoing reasons, MaceRich's motion is granted. The parties are instructed to submit an order consistent with this memorandum decision.

---

**6.** In a related decision in the *Ames* case, the court examined the legislative history of section 365(d)(3) and found it to be of "limited value" in determining why Congress chose to use the word "obligation" in the statute rather than the word "claim." *See In re Ames Dept. Stores, Inc.,* 136 B.R. 353, 356–57, n. 6 (Bankr.S.D.N.Y.1992).