**In re APPLETREE MARKETS INC., Appletree Markets 35, Inc., Appletree Markets 38, Inc., Appletree Markets 39, Inc., Appletree Markets 40, Inc., Appletree Markets 41, Inc., Appletree Markets 83, Inc., Texas Supermarkets Dairy Production, Inc., Debtors.**

**Bankruptcy No. 92–40003–H4–11.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

April 6, 1992.

Henry Kaim, Sheinfeld, Maley & Kay, Houston, Tex., for debtor.

### MEMORANDUM OPINION

WILLIAM R. GREENDYKE, Bankruptcy Judge.

Came on for hearing on March 4, 1992, the Debtor's Motion to Extend Time to Assume or Reject Leases and the Motions to Compel Compliance with Section 365(d)(3) by State Teacher's Retirement System and Kin Properties, et al., concerning leaseholds the Debtor occupies for grocery stores and other operations.

Debtor filed its petition for relief on January 2, 1992. Subsequent to that date, Debtor advised a number of its lessors it would be paying "market rent" beginning February 1, 1992, but that any prior accrued obligations would not be paid until it had formally assumed the lease. By the date of the hearing, accrued rent from January 2 through January 31 had not been paid nor had 1991 taxes or common area charges due under virtually all of the leases. Lessors sought to compel payment of all the post-petition accrued rent obligations pursuant to section 365(d)(3) of the Code. In each case, rent (whether payable monthly, quarterly or annually) fell due under the terms of the respective leases on January 1, 1992—the day before the debtors filed for relief.

With respect to the Motion to Extend Time, I allowed debtor to extend the time for its assumption/rejection of lease obligations until June 30, 1992, for cause shown. Further, pursuant to the section 365(d)(3) motions to compel, I ruled that Debtor was to pay rent at the contract rate on all leases which have not specifically been assumed or rejected and approved by the Court. I also announced I would rule upon the need to make payments upon lease claims for a mechanic's and materialman's lien and 1991 taxes based on stipulations to be presented after the hearing. I took under advisement the issue of proration of January rental obligations and requested briefs from the parties.

### I. *Issue.*

The issue before me is whether the Debtor must pay prorated rent, pursuant to section 365(d)(3) (as added by the Bankruptcy Amendments and Federal Judgeship Act of 1984), prior to the Debtor's formal assumption or rejection of leases under section 365(d)(4) or, since the respective rents literally fell due prepetition, whether the debtor need only pay rent falling due postpetition. I must therefore interpret the language of § 365(d)(3) which requires that the Debtor "shall *timely perform* all the

*obligations* of the debtor *arising from and after the order for relief* under any expired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3) (emphasis added).

## II. *Analysis.*

### A. Case Law.

This is an issue of first impression in this circuit. Several courts outside the jurisdiction have considered the issue directly. In *Daugherty v. Kenerco Leasing, Inc. (In re Swanton Corporation)*, 58 B.R. 474 (Bankr.S.D.N.Y.1986), the court required proration and its rationale can be stated sufficiently by its final sentence: "Equity requires proration." *Id.* at 475. In the case of *In re S & F Concession, Inc.*, 55 B.R. 689 (Bankr.E.D.Pa.1985), the court's ruling also resulted in proration. However, the court supported its conclusion by looking to the "clear" language of the statute and case law which supported proration by citing legislative history (130 Cong.Rec. S8994–95 (daily ed. June 29, 1984)) and three cases which, in the first instance, considered an administrative claim against a debtor who both vacated the premises and who failed to object to the lessor's § 365(d)(3) motion on a deemed rejected lease; second, a case determining the requisites of assumption of a lease under the 1984 amendment; and finally, a case which expressly did not take into consideration the new, 1984 statute concerning section 365(d)(3). No party has cited, nor have I found, any circuit court authority on the issue.

### B. Legislative History and Statutory Language.

▮▮▮ Pursuant to Code sections 503(b)(1)(A) and 507(a)(1), rent on property occupied by the debtor is an administrative expense. The Code provides administrative priority for "the actual, necessary costs and expenses of preserving the estate, including services rendered after the commencement of the case." It is clear that post-petition rentals for services provided to the Debtor constitute an administrative claim. The fact that a rental is found to be entitled to administrative priority does not foreclose the issue of *when* the claim must be paid either pursuant to section 503 or section 365. Allowance of administrative expenses may occur *after notice and hearing* and a debtor in pre–1984 amendment practice would have sought payment of rent as an administrative expense. Often in ˙Chapter 11 cases, administrative expenses are not paid until confirmation. In *Memphis–Shelby County v. Braniff Airways, Inc.*, 783 F.2d 1283 (5th Cir.1986), the court stated that the typical remedy for a party to an unexpired lease who is suffering economic losses as a.result of a bankruptcy is to move for an order compelling the bankruptcy trustee to assume or reject the lease within a certain time period pursuant to section 365(d)(2) of the Bankruptcy Code. *Id.* at 1285. *Braniff* construed the Code prior to the enactment of the 1984 amendments; those amendments now *require* the payment of all "obligations" of the debtor. *See* 11 U.S.C. § 365(d)(3). This change in section 365(d)(3) eliminated the notice, application and hearing practice for payment of rentals as administrative expenses prevalent in pre–1984 Code practice.

In order to reduce the burdens imposed on lessors as discussed above, Congress amended section 365 by adding (d)(3) to provide more specific language on how and when lessors should be paid during the period when debtors have neither assumed nor rejected a lease. The Debtor and Lessors in this case both rely on the language of the statute and the interpretive comments in the legislative history of the Bankruptcy Amendments and Federal Judgeship Act of 1984 to answer the issue of proration of rents. The relevant text is as follows:

> A second and related problem is that during the time the debtor has vacated space but not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area

charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property *at the time required in the lease.* This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease. For cause the court can extend the time for performance of obligations due during the first 60 days after the order for relief, but not beyond the end of such 60–day period. At the end of this period, the amounts due during the first 60 days would be required to be paid, and thereafter, all obligations must be performed on time. This permissible 60–day grace period is intended to give the trustee time to determine what lease obligations the debtor has and to locate the cash to make the required payments in exceptionally large or complicated cases. The bill does not require the performance of the trustee's obligations under subsections (b) or (f) of section 365. The acceptance by the lessor of any payments made by the trustee as required by this subsection does not constitute a waiver or relinquishment of the lessor's rights under such lease or under the bankruptcy code.

130 Cong. Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch) (emphasis added).

Senator Hatch's remarks include the statement that the trustee is required to "perform all obligations of the debtor under a lease of nonresidential real property at the time required in the lease." This remark nearly parrots the language of the statute itself which provides that the "trustee shall timely perform all the obligations of the debtor ... until such lease is assumed or rejected." 11 U.S.C. § 365(d)(3). Senator Hatch adds, however, that the obligations must be performed *at the time required in the lease.* This appears to be the only discussion which addresses when and what "obligations" under the lease must be performed. However, this language does not speak directly to the problem of when rent, due and payable before the petition, yet based upon possession provided partially post-petition, becomes an "obligation" within the terms of the statute.

The statute states plainly that the Trustee shall perform all lease obligations of the debtor *arising from and after* the order for relief. 11 U.S.C. § 365(d)(3). The Appletree lease obligations under consideration arise once each month on the first of the month, once each quarter commencing the first of January and, in one instance, annually. The individual lease obligations are not, by their respective terms, payable per diem. The lease forms may provide for per diem accrual of rent in a "holdover" context but make no provision for proration in a context such as this.

Neither the statute nor the legislative history expressly require payment of prorated rents. The Supreme Court in *Union Bank v. Wolas,* — U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991), in construing a 1984 Amendment to the Code and the effect of its legislative history stated that "[t]he fact that Congress may not have foreseen all of the consequences of a statutory enactment is not sufficient reason for refusing to give effect to its plain meaning." (citing *Toibb v. Radloff,* — U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)). As discussed above, the plain meaning of Section 365(d)(3) provides for payment of obligations *arising after* the petition is filed, not before.

■ Considering the date of filing and the potential harm, especially in light of quarterly and annual rents which fell due on January 1, the equities clearly lie with

the lessors. However, when Congress directs the result pursuant to statutory language, my equity jurisdiction does not extend beyond the statutory boundaries. In *United States v. Sutton,* 786 F.2d 1305 (5th Cir.1986), the Fifth Circuit stated that section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Id.* at 1308 (referring to 11 U.S.C. § 105). The *Sutton* court found that substantive relief must be available under the Bankruptcy Code before the equitable powers may be utilized; I agree and will comply with the statute and precedent.

III. *Conclusion.*

The plain language of the statute is clear. Section 365(d)(3) provides for timely performance of all obligations of the debtor from and after the order for relief. The Code language as amended does *not* compel immediate payment of all accrued rents within the 60–day period following the filing of the petition. Given the explicit language, this court is bound by the statute. The Debtor will not be required to make payment of any portion of the January rent pursuant to section 365(d)(3)'s "timely performance of obligations" provision. No mention has been made in the briefs by the lessor-movants of any need to address common area maintenance charges or ad valorem taxes so, without prejudice, I decline to rule on these matters.

A form of order comporting with this opinion shall be submitted by counsel for the debtor within ten (10) days from the date of entry hereof. The findings and conclusions contained herein are cumulative to those made in open court on March 4, 1992.