In re AMES DEPARTMENT STORES,
INC:, Eastern Retailers Service
Corporation, et al., Debtors.

Bankruptcy Nos. 90 B 11233
through 11285 (JAG).

United States Bankruptcy Court,
S.D. New York.

Feb. 2, 1993.

See also 148 B.R. 756.

Michael L. Cook, Skadden, Arps, Slate, Meagher & Flom, New York City, for debtor.

Stephen B Gleich, Stephen B Gleich & Associates, Great Neck, NY, for Net Realty Holding Trust.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

### Introduction

Presently before the Court is a motion by a landlord to compel debtor's payment of lease obligations pursuant to 11 U.S.C. § 365(d)(3). The primary issue concerns the interpretation of this section of the Bankruptcy Code, and requires this Court's determination of whether these obligations arose pre- or post-petition. Also pending is debtor's cross-motion for payment by the landlord of a sum which arises from the cancellation of the lease at issue. After notice and hearing and due consideration of the various pleadings, this Court makes the following findings of fact and conclusions of law pursuant to F.R.Bky.P. 7052.

### Pre–Petition v. Post–Petition Obligations

On April 25, 1990, Ames Department Stores, Inc., together with its 52 affiliates including AKD, Inc. ("Debtor"), filed a petition for reorganization pursuant to 11 U.S.C. Chapter 11. Prior to that date, Debtor had operated one of its stores in Somersworth, New Hampshire under a lease with Net Realty Holding Trust ("Landlord"). Debtor ceased business operations at this leased store pre-petition on February 3, 1990. The remaining inventory was then liquidated, with the last sale made on April 14, 1990, shortly before Debtor filed for reorganization.

In addition to basic monthly rent, the lease provided for common area maintenance ("CAM") charges and real estate taxes to be passed through to Debtor as additional rent. The lease further required Debtor to pay percentage rent, calculated as a percentage of Debtor's annual gross sales which exceeded a certain sum minus half of the real estate taxes paid by Debtor in that year. Landlord contends that each of the above charges which became due and payable by Debtor after the filing of the petition should be paid immediately pursuant to 11 U.S.C. § 365(d)(3).

In total, Landlord is requesting the sum of $72,638.43 to be paid by Debtor at this time, broken down as follows:

| | |
|---|---:|
| Basic Rent for May, 1990 | $ 5,416.66 |
| Real Estate Taxes for the period 4/1/90 through 5/31/90 | 8,948.52 |
| Common Area Maintenance for the period 10/1/89 through 5/31/90 | 32,185.08 |
| Percentage Rent | 26,088.17 |
| TOTAL: | $72,638.43 |

Of the above amounts, Debtor concedes that certain portions of each charge are currently payable as post-petition obligations including, for example, basic rent for May, 1990. The remaining amounts represent charges incurred by Landlord pre-petition but not reimbursable under the lease by Debtor until post-petition. The remaining sums are the initial focus of this dispute.

Section 365(d)(3) provides "[t]he trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of non-residential real property, until such lease is assumed or rejected ..." It is Landlord's position that, because the obligations became due and payable under the lease post-petition, § 365(d)(3) mandates their immediate payment. Debtor argues that these obligations, although maturing after the order for relief, arose beforehand when incurred by Landlord.

This Court rejects the argument that the time for payment governs when an obligation arises. In fact, this very issue has been recently decided by this Court in *In re Ames Department Stores, Inc.*, 136 B.R. 353 (Bankr.S.D.N.Y.1992). Therein, this Court stated:

Unquestionably, the [CAM charges and real estate taxes] were incurred prior to the bankruptcy filing. Furthermore, the language of the lease, which details Debtors' underlying obligations and then specifies the *timing* of the actual reimbursement, is clear. It is this *time for payment, not the obligation itself,* which arose post-petition.

*Id.* at 356. (Emphasis added in part). Similarly, that decision discussed the relevant legislative history and found it to be of little value in deciding this issue. *Id.* at 356, n. 6.

■ Landlord's contention would lead to an inequitable and incongruous result. For example, if a Chapter 11 debtor rejects a lease one day before its annual reimbursement obligation for the past years' real estate taxes becomes payable, then that landlord would have neither a pre-petition nor post-petition claim to assert against the estate, if the payment due date is determinative. It is profoundly more sensible to conclude that, as of the filing, a landlord has an unmatured, pre-petition claim for reimbursement of the taxes which had accrued pre-petition. Thereafter, a landlord would have an administrative claim for those taxes which accrue post-petition but before rejection.[1]

■ Accordingly, in the case at bar this Court holds that those portions of the relevant CAM charges and real estate taxes which were *incurred* pre-petition are deemed a pre-petition claim. The remainder of those charges incurred post-petition shall be paid by Debtor immediately or as a post-petition administrative claim.

■ Regarding percentage rent, this Court sees no reason to depart from this analysis. Because all sales upon which percentage rent could be calculated were generated pre-petition, this Court finds the full claim for percentage rent to be a pre-petition claim. *In re Revco D.S., Inc.*, 111 B.R. 626 (Bankr.N.D.Ohio 1989).

### Cancellation of the Lease

After business operations ceased at the New Hampshire store, the parties entered into a Cancellation of Lease (the "Cancellation") in March 1990, agreeing to terminate the lease as of May 31, 1990. Landlord duly paid the required sum of $25,000.00 to Debtor in compliance with the Cancellation.

Paragraph 6 of the Cancellation provides a restrictive use covenant, whereby Landlord agreed not to re-let the premises to particular discount department stores. It then provides:

> The restriction shall remain in effect until October 1, 1990 or January 31, 1991 as set forth herein. If Landlord, after having exercised diligent and good faith efforts to retenant the Premises with retail operations which are not violative of the foregoing, shall not have been successful in such retenanting efforts by September 15, 1990, then the Lessor shall give Lessee written notice on or before September 15, 1990 and Lessee shall, on or before October 1, 1990 notify Lessor, in writing of its election of either of (a) that the restrictive use provision will lapse and be of no further force and effect as of October 1, 1990 upon payment by Lessor to Lessee of an additional payment of $75,000 or (b) that Lessee extends the restrictive use covenant through January 31, 1991, and upon such extension, no additional payment shall be due to Lessee.

By letter dated September 14, 1990, Landlord wrote to Debtor, stating "[w]e have been unsuccessful in retenanting the Premises with retail operations consistent with the requirements of Article 6 of the above-referenced [Cancellation] agreement, despite our diligent, good-faith efforts." On September 25, 1990, Debtor responded by letter as follows:

> files on October 14th, and immediately rejects, and you're suggesting that under state law since it never became due and payable, therefore it cannot be a claim in the Bankruptcy Court, is that your position?
> Mr. Gleich: I would say that would have to be the consequence of the applicable law.
>
> *Transcript* at 23 (Feb. 11, 1992). For example, Landlord states in its motion that percentage rent was due on or before September 13, 1990. This percentage rent payment became due post-rejection and, according to Landlord's argument, should not be a claim at all in this bankruptcy.

---

1. Ironically, Landlord's logic is internally inconsistent. At oral argument, Landlord's counsel reiterated its position to this Court in the following colloquy:
   Mr. Gleich [Landlord's Counsel]: And in our brief, we ... unequivocally conclude from the law of the State of New Hampshire that the obligations under this lease are unenforceable, they're not collectable, they do not become obligations until their payment due dates.
   The Court: Let's just stop and examine that just for a moment. We go back, and I'm still troubled by the debt that becomes due on October 15th under your scenario, the Debtor

A.K.D., Inc. [Debtor], hereby notifies Net Realty Holding Trust [Landlord], as consistent with Article 6 of the above referenced agreement, the restrictive use provision will lapse and be of no further force and effect as of October 1, 1990, upon payment of seventy-five thousand dollars ($75,000) by Net Realty Holding Trust to A.K.D., Inc.

Having failed to receive the $75,000 payment, Debtor again wrote to Landlord on October 21, 1991, requesting remittance of that payment. Thereafter, disagreement ensued regarding the relative rights and obligations of the parties under Article 6. Debtor's cross-motion requests this payment.

■ The precise language at issue, coupled with Debtor's · conduct, leads this Court to construe the Article in favor of Landlord. The provision prohibits the "use and occupancy" of the space by certain prospective tenants. It does not prevent Landlord from marketing and negotiating with one of those retailers. Landlord, however, would have to observe a waiting period by prohibiting that retailer from entering into possession until the restriction had lapsed, either on October 1, 1990 or later on January 31, 1991. Upon Debtor's approval, the $75,000 payment would allow Landlord to circumvent this waiting period.

■ The language itself indicates that after receiving Lessor's notice, the Lessee was to notify the Lessor, "in writing of *[Lessee's] election*." Thus, the option began with Debtor, which could ensure that Landlord wait until January 31, 1991 to retenant with one of the forbidden entities. Alternatively, Debtor could allow the "restrictive use provision to lapse ... as of October 1, 1990 *upon payment* by Lessee" of $75,000. In essence, the Debtor could "offer" to allow the restriction to lapse; the $75,000 payment would indicate Landlord's "acceptance." [2] Thus, the restriction was supposed to lapse *not only* upon Debtor's notice, but upon payment of the $75,000 consideration. Since Landlord failed to

deliver the payment, the restriction remained in force until it lapsed by its own terms on January 31, 1991. Further, by failing to again request the $75,000 payment in a timely fashion, Debtor has conducted itself in conformance with this Court's interpretation that Landlord is not obligated to pay over to Debtor $75,000.

*Tax Abatement*

This matter is further complicated by the existence of a tax abatement payment in the amount of $11,726.67 which Landlord owes Debtor for taxes previously paid by the Debtor. This Court, however, has not been adequately provided with the relevant facts concerning this abatement. This issue ·will await determination pending appropriate action by the parties to bring these facts before the Court.

*Conclusion*

It is unclear to this Court precisely what portion of the $72,638.43 sought by Landlord was incurred pre-petition. It appears that the breakdown of pre-petition and post-petition amounts in Ms. Olko's letter dated August 10, 1990, attached as Exhibit E to Debtor's response, is most precise. However, this Court cannot confirm the validity of those amounts. Therefore, the parties are ordered to stipulate to those amounts which, in accordance with this opinion, arose pre-petition and post-petition. If the parties are unable to reach agreement within the next thirty (30) days, then they shall so notify the court, at which time the matter will be set for an evidentiary hearing.

---

2. Presumably, when drafting such language the parties anticipated the $75,000 payment to be made on or before October 1.