**In re ALL FOR A DOLLAR, INC., Debtor.**

**Bankruptcy No. 94–42917–HJB.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 2, 1994.

---

Edward H. Seksay, Boston, MA, for Howard Spring, as General Partner of Lydig Shopping Center.

Joseph H. Reinhardt, Springfield, MA, for debtor.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the "Motion of Howard Spring, as General Partner of the Lydig Shopping Center (the "Landlord") to Compel Debtor to Assume or Reject Lease and for Immediate Payment of Postpetition Rent" (the "Landlord's Motion"). At the hearing on the Landlord's Motion, all of the issues, save one, were resolved by agreement of the parties. The narrow issue before the Court is whether a debtor's post-petition tax obligation under an unassumed lease should be calculated on a prorated basis or on a billing date basis.

### I. BACKGROUND

All for A Dollar Inc. (the "Debtor") filed a Chapter 11 petition in this Court on June 27, 1994. On the date of the filing, the Debtor operated a chain of over 160 consumer variety stores throughout the New England states, New York, New Jersey and Pennsylvania. The Debtor's reorganization efforts have included a "downsizing" of store locations. This "downsizing" has required the rejection of leases covering various of the retail locations.

Pursuant to 11 U.S.C. § 365(d)(4), the Debtor was required to assume or reject all non-residential real property leases on before August 26, 1994 (or timely seek an extension of such deadline). On July 29, 1994, the Landlord's Motion was filed to compel the Debtor to assume or reject one of those unexpired leases relating to real property located at 744 Lydig Avenue, Bronx, New York (the "Lease"), and to compel the Debtor to pay outstanding post-petition rent and other amounts due under the Lease. Specifi-

cally, the Landlord requested payment for (1) post-petition rent in the approximate amount of $14,121.76, (2) the Debtor's (20%) share of the monthly cost of maintaining the sprinkler and central alarm system, and (3) the Debtor's (20%) share of real estate taxes for the remainder of the year.[1]

The Debtor objected to the Landlord's Motion on the basis that the Debtor would timely seek an extension of the deadline to assume or reject the Lease and also would pay all post-petition rent properly due. The Landlord's Motion was marked for hearing. However, prior to the hearing on the Landlord's Motion, the Debtor filed a motion seeking leave to reject the Lease, effective September 30, 1994.

At the hearing on the Landlord's Motion, the Court entered an order, by agreement of the parties, which resolved the issue of the amount of post-petition rent owed to the Landlord as well as the issues relating to the sprinkler and alarm system. The Court's order provided:

Lease will be deemed rejected as of September 30, 1994 and the Debtor is ordered to vacate the leased premises no later than September 30, 1994. Debtor is ordered to pay the movant 1) the sum of $4,861.76 forthwith and 2) all other postpetition obligations under the lease (except real estate taxes) in a timely fashion until the Debtor vacates the property. The Court takes under advisement the movant's request for payment of $10,322.91 on account of postpetition real estate taxes.

Through its motion and oral argument, the Landlord argues that the Debtor is obligated to pay the sum of $10,322.91 in post-petition taxes which was billed in July, 1994, for the six month period covering July 1, 1994

---

1. Paragraph 67 of the Second Rider to the Lease provides in pertinent part:

    The Tenant agrees to pay during the term of this lease, as and [sic] collectible as additional rent, 20% of all the real estate taxes ... The real estate taxes assessed against the land and building for the 1991/92 fiscal year is $110,-785.64. Such taxes shall be paid within five (5) days after it shall have been demanded by Landlord, and it shall be collectible as additional rent. A photocopy of the tax bill shall be sufficient evidence of the amount of taxes so imposed, and for the calculation of the amount

    to be paid by the Tenant.... In addition to the above payments, tenant shall also be obligated to pay to Landlord, collectible as additional rent, Tenant's pro-rata share as listed above of any assessments, special or otherwise and for the area in which the demised premises are located being designated as Business Improvement District.

    See Exhibit "B" of "Motion of Howard Spring, as General Partner of the Lydig Shopping Center, to Compel Debtor to Assume or Reject Lease and for Immediate Payment of Postpetition Rent."

through December 31, 1994, notwithstanding the fact that the Debtor would leave the premises on September 30, 1994. The Landlord points to 11 U.S.C. § 365(d)(3) [2] which requires the Debtor to meet all post-petition obligations under an unexpired lease prior to assumption or rejection of the lease. The Landlord argues that the Debtor's real estate tax obligation (evidenced by a bill covering real estate taxes covering the period July–December 1994) must be satisfied in the full amount because it is an "obligation" under the Lease which must be timely performed by the Debtor pursuant to § 365(d)(3). The Debtor argues that the real estate tax obligation should be prorated on a monthly basis.

## II.  DISCUSSION

Prior to the enactment of § 365(d)(3), the payment of post-petition lease obligations prior to assumption or rejection of an unexpired lease was governed by 11 U.S.C. § 503(b)(1). *See generally,* 3 COLLIER ON BANKRUPTCY, § 503.04 at 524–28 (15th ed. 1991). Section 503(b)(1) provides for the allowance of administrative expenses including "the actual, necessary costs and expenses of preserving the estate." *See* 11 U.S.C. § 503(b)(1). Pursuant to this section, several courts allowed, as an administrative expense, the full amount of the rent at the contract rate, so long as it was not clearly unreasonable, but prorated that rent over the postpetition, prerejection period. *E.g., In re Dunwoody Village Sporting Goods, Inc.,* 11 B.R. 493, 494 (Bankr.N.D.Ga.1981); *In re Keyboard Center, Inc.,* 9 B.R. 472, 474 (Bankr. D.Conn.1981); *In re Standard Furniture Co.,* 3 B.R. 527, 529–30 (Bankr.S.D.Cal.1980). Similarly, the applicable decisions allowed a *prorated* payment of real estate taxes over the postpetition, prerejection period. *E.g., Field v. Herrell (In re J. Bain, Inc.),* 554

F.2d 255 (5th Cir.1977); *In re Lackow Brothers, Inc.,* 18 B.R. 770, 772 (Bankr.S.D.Fla. 1982); *In re Keyboard Center, Inc.,* 9 B.R. at 475.

■ The enactment of § 365(d)(3) commanded the trustee's strict adherence to the terms of any lease of nonresidential real property, and, therefore, removed the bankruptcy court's discretion to alter the amount of the stated rent under the lease. 3 COLLIER ON BANKRUPTCY, § 503.04, at 527. Section 365(d)(3) explicitly requires a debtor to *timely* perform all post-petition obligations due under an unexpired lease. *See* 11 U.S.C. § 365(d)(3). Legislative history addressed the amendment created under § 365(d)(3) as follows:

> This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code.... A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments under the lease. ....
> This bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

H.R.Conf.Rep. No. 882, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.C.C.A.N. 576.

■ While Congress clearly intended to provide landlords of nonresidential real property timely payment for services provided under the lease during the postpetition, prerejection period, *see Child World, Inc. v. The*

---

**2.** Section 365(d)(3) provides:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The Court may extend, for cause, the time for performance of any such obligation that arises within 60 days after

the date of the order for relief, but the time for performance shall not be extended beyond the 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

11 U.S.C. § 365(d)(3).

*Campbell/Massachusetts Trust (In re Child World, Inc.)*, 161 B.R. 571, 575 (S.D.N.Y. 1993), Congress did not explicitly address whether obligations owed under a lease, albeit at the contract rate, should be allocated. A majority of courts considering this question have adhered to the long-standing practice of prorating payment of a debtor's obligations under a lease, regardless of the billing date. *E.g., Inland's Monthly Income Fund v. Duckwall–Alco Stores, Inc. (In re Duckwall–Alco Stores, Inc.)*, 150 B.R. 965 (D.Kan.1992); *In re Almac's, Inc.*, 167 B.R. 4 (Bankr.D.R.I.1994); *In re Child World, Inc.*, 161 B.R. 571; *In re Ames Department Stores, Inc.*, 150 B.R. 107, 108 (Bankr. S.D.N.Y.1993); *In re RB Furniture, Inc.*, 141 B.R. 706, 712 (Bankr.C.D.Cal.1992); *In re Revco D.S., Inc.*, 111 B.R. 626 (Bankr. N.D.Ohio 1989); *Feld v. S & F Concession, Inc. (In re S & F Concession, Inc.)*, 55 B.R. 689 (Bankr.E.D.Pa.1985).

In the district court decision of *In re Child World, Inc.*, the court held that § 365(d)(3) obligated the trustee to pay only a prorated portion of lessor's tax bill during the postpetition, prerejection period. Judge Goettel vehemently rejected the notion that Congress intended to rely mechanically on the billing date in determining the payment of obligations under the lease.

> Nothing in the legislative history indicates that Congress intended § 365(d)(3) to overturn the long-standing practice under § 503(b)(1) of prorating debtor-tenants' rent to cover only the postpetition, prerejection period, regardless of billing date. . . . Allowing landlords to recover items of rent which are billed during the postpetition, prerejection period, but which represent payment for services rendered by the landlord outside this time period, would grant landlords a windfall payment, without any support from the legislative history.

161 B.R. at 576. Moreover, this interpretation coincides with the policy of preserving the priority and distribution scheme established by the Bankruptcy Code. *See id.; In re RB Furniture, Inc.*, 141 B.R. at 712.

A minority of courts have strictly relied on the billing date in determining the method of payment of an obligation under a nonresidential property lease during the postpetition, prerejection period pursuant to § 365(d)(3). *E.g., In re R.H. Macy & Co., Inc.*, 152 B.R. 869 (Bankr.S.D.N.Y.1993), *aff'd*, 1994 WL 482948, No. 4414 (S.D.N.Y. Feb. 23, 1994); *In re Child World, Inc.*, 150 B.R. 328 (Bankr. S.D.N.Y.1993), *rev'd*, 161 B.R. 571 (S.D.N.Y. 1993); *In re Appletree Markets, Inc.*, 139 B.R. 417 (Bankr.S.D.Tex.1992). This interpretation of § 365(d)(3) suggests a very literal definition of "obligation" under the statute. *See In re R.H. Macy & Co., Inc.*, 152 B.R. at 873 ("The ordinary meaning of the word obligation refers to '[t]hat which a person is bound to do or forbear.' "). For example, in *In re R.H. Macy & Co., Inc.*, the bankruptcy court required a debtor (which filed its petition in January 1992) to pay "timely" a postpetition bill in the amount of $438,000 covering real estate taxes during the period 1987–1992. The court reasoned that Congress' use of the word "obligation" rather than the word "claim", which is expressly defined under the Bankruptcy Code, suggested that Congress did not intend to preserve the uniformity of treatment of creditors based on when a claim arises for bankruptcy purposes. 152 B.R. at 873 n. 3. Instead, the court determined that Congress intended to confine the term "obligation" to the plain and ordinary meaning of the word. *Id.* at 873. In conformity with its interpretation of "obligation", the court emphasized that the "obligation arose postpetition when the supplemental and adjusted tax statements were issued, at which time they first became obligations of the [d]ebtor under the [l]ease." *Id.* at 874.

This Court rejects this literal reading of § 365(d)(3) because it produces results that are inconsistent with the priority and distribution scheme under the Bankruptcy Code. *See In re Child World, Inc.*, 161 B.R. at 576. Moreover, the minority view departs from the legislative intent of providing a landlord "current payment" for the "current services" which the landlord is compelled to provide pending the assumption or rejection of a lease. *See id.* at 575–76. To order the Debtor to make full payment here would have the result of compelling the Debtor to make a

payment for a service which it never received.

In view of the foregoing, this Court adopts the majority view which calculates a Debtor's obligation under a lease during the postpetition, prerejection period on a prorated basis. In the instant case, the Landlord submitted a bill in July, 1994 in the amount of $10,322.91, covering the period of taxes owed for the six month period of July through December 1994. In view of the Debtor's rejection of the Lease, effective September 30, 1994, this Court hereby awards payment to the Landlord in the amount of $5,166.46, which represents a prorated portion of the bill covering the period July, 1994 through the date of rejection, September 30, 1994.