MANSMANN, Circuit Judge,
dissenting:
I.
This appeal requires us to determine when a leasehold obligation “arises” for purposes of § 365(d)(3) of the Bankruptcy Code. The majority holds, in effect, that an obligation that accrues over time does not arise as it accrues, but instead arises at whatever time the parties specify in their lease. Because I believe that the majority’s holding gives an unwarranted preference to landlords for recovery of “pre-petition” debts, I respectfully dissent.
II.
Section 365(d)(3) provides, in pertinent part, that:
The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.
11 U.S.C. § 365(d)(1). The plain import of this provision is that the trustee must fulfill all obligations under the lease which “arise” from the date of the order until the date of assumption or rejection.[1]
*213 In the present case, the lease called for reimbursement of taxes when invoiced by the landlord. Shortly after the tenant filed for bankruptcy protection in July, 1997, the landlord issued invoices for taxes attributable to all of 1996 and 1997, up to the September 1, 1997 expiration date of the lease. The majority today holds that, because the billing took place within the eight-week administrative period between entry of an order for relief and expiration of the lease (before assumption or rejection thereof), the entire twenty months’ worth of tax obligations “arose” during that eight-week period. In so holding, the majority elevates the accident or artifice of the billing date above the economic reality of the accrual, and thereby inappropriately burdens the administration of the bankrupt estate and unfairly favors landlords over similarly situated pre-petition creditors.
The majority’s holding is predicated on its view that the “fundamental tenet” of § 365(d)(3) is that “it is the terms of the lease that determine the obligation and when it arose”. Supra at 209. While I agree that the terms of the lease determine the obligation, the statute says nothing about how to determine when the obligation arises. Nothing in the text is inconsistent with the common-sense view that when an obligation arises may be fixed by its intrinsic nature and/or by the extrinsic circumstances of its accrual. An obligation attributable to a particular time may well be said to “arise” at that time, and an obligation that accrues over time may be said to “arise” as it accrues, without doing violence to the statutory language.
I believe that the true “fundamental tenet” of § 365(d)(3) is that landlords, like other post-petition creditors, should receive full and timely payment for post-petition services. This is in keeping with the policy of the Bankruptcy Code of giving priority to post-petition claims to enable the debtor to keep operating for as long as its current revenues cover current costs (so that the debtor’s business is yielding a net economic benefit). See In re Handy Andy Home Improvement Centers, Inc., 144 F.3d 1125, 1127 (7th Cir.1998). Moreover, § 365(d)(3) should be read in light of the overarching policy of treating all creditors within a class (such as unsecured pre-petition trade creditors) alike. Both of these policies are disserved by requiring the debtor or trustee to repay back taxes, a pre-petition “sunk cost”, as a condition of ongoing operations. See id. at 1128.
Our decision today creates a split of authority among the Courts of Appeals concerning priority of back taxes that are billed post-petition, as it is squarely in conflict with the Seventh Circuit’s well-reasoned decision in Handy Andy. As Chief Judge Posner explained:
The quarrel between the parties is over whether [tenant’s “obligation” under the lease could arise before [tenant] was contractually obligated to reimburse [landlord] for the taxes that the latter had paid .... [the] “billing date” approach is a possible reading of section 365(d)(3), but it is neither inevitable nor sensible. It is true that [tenant’s obligation to [landlord] to pay (or reimburse [landlord] for paying) the real estate taxes did not crystallize until the rental due date after the taxes were paid. But since death and taxes are inevitable and [tenant’s obligation under the lease to pay the taxes was clear, that obligation could realistically be said to have arisen piecemeal every day of 1994 and to have become fixed irrevocably when, the last day of the year having come and gone, the lease was still in force. Had the lease been terminated for one reason or *214 another on January 1, 1995, [tenant] would have had a definite obligation to reimburse [landlord] for the 1994 real estate taxes when those taxes were billed to [landlord]. The obligation thus arose, in a perfectly good sense, before the bankruptcy. The obligation to reimburse [landlord] for the first installment of the 1995 taxes likewise arose before the bankruptcy.
Handy Andy, 144 F.3d at 1127. I find this reasoning persuasive, and I would follow it in this case.
The majority finds support for its position in a recent decision by the Sixth Circuit that involved just one month of advance rent rather than a year and a half of back taxes. See In re Koenig Sporting Goods, Inc., 203 F.3d 986 (6th Cir.2000). Although I disagree with the statutory analysis in Koenig SpoHing Goods, it would seem that parceling a continuing obligation into monthly increments is far less subversive of statutory policies than aggregating a year or more of accrued debt for priority purposes. In any event, the Sixth Circuit itself apparently considers the difference between a short advance payment and a long back payment to be important. Compare Vause v. Capital Poly Bag, Inc., 886 F.2d 794 (6th Cir.1989) (rejecting argument that farm rent payable at end of year accrued only on the payment date) with Koenig Sporting Goods, 203 F.3d at 989, nn. 4 & 5 (distinguishing Vause as involving rent payments in arrears rather than in advance).
Although some courts have applied the “billing date” approach adopted by the majority today, most decisions have rejected that approach in favor of proration. See, e.g., In re McCrory Corp)., 210 B.R. 934, 940 (S.D.N.Y.1997) (observing that the billing date approach “would result in a windfall either to the landlord or the debtor-tenant”); In re Victory Markets, Inc., 196 B.R. 6 (Bankr.N.D.N.Y.1996); In re All For A Dollar, Inc., 174 B.R. 358 (Bankr.D.Mass.1994); In re Child World, Inc., 161 B.R. 571 (S.D.N.Y.1993) (observing that allowing landlords to recover for pre-petition services billed post-petition “would grant landlords a windfall payment, to the detriment of other creditors”); In re Ames DepaHment Stores, 150 B.R. 107 (Bankr.S.D.N.Y.1993). Cf. Daugherty v. Kenerco Leasing Co. (In re Swanton Corp.), 58 B.R. 474 (S.D.N.Y.1986) (rent prorated although lease called for yearly rental payments).[2]
The proration approach is in keeping with what had been, prior to enactment of § 365(d)(3), the well-established rule. See, e.g., Child World, 161 B.R. at 575-76 (referring to “the long-standing practice under § 503(b)(1) of prorating debtor-tenant’s rent to cover only the postpetition, prerejection period, regardless of billing date”). As the majority acknowledges, we should not read legislation to alter established bankruptcy practice “absent a clear indication that Congress intended such a departure.” Supra at 211, quoting Pennsylvania Dept. Pub. Welfare v. Davenport, 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). See also Cohen v. de la Cruz, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (same); Midlantic Nat’l Bank v. New Jersey Dep’t of Envtl. Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (“The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes the intent specific. The court has followed this rule with particular *215 care in construing the scope of bankruptcy codifications.”).
Although, as the majority suggests, Congress clearly intended to change prior practice when it enacted § 365(d)(3), I can find no indication of a specific intent to displace proration with the billing date approach. Rather, it seems clear that the statute was aimed at providing landlords with current pay for current services and relieving them from the “actual and necessary” analysis required under § 503(b)(1). Nothing in the text or legislative history suggests that Congress wished to go beyond putting landlords on the same footing with other trade creditors by allowing them through the timing of their billing to transform pre-petition claims into post-petition claims. See Handy Andy, 144 F.3d at 1128; Child World, 161 B.R. at 575-76.
The majority seeks to marshal support for its interpretation from the remarks of Senator Hatch in the legislative history. However, the Senator’s observation that the trustee must perform “all the obligations ... at the time required in the lease” simply has no bearing on the question before us. The quoted passage merely indicates when an obligation must be 'performed-, “at the time required in the lease”, which adds nothing to the statute’s requirement of “timely” performance. It simply does not address how to determine when the obligation arises.
III.
Because neither the language of the statute nor the legislative history forecloses the District Court’s common-sense interpretation- — one that preserves prior practice and better serves fundamental bankruptcy policies, I would affirm the decision below. Accordingly, I dissent.

. See generally 2 Norton Bank. L. & Prac.2d § 42:8 Nonresidental Real Property Leases under Code § 365(d)(3) (2000 Supp.); Arnold M. Quittner, Executory Contracts and Leases, 805 PLI/Comm 79, 249-53 (April 2000).